## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

THE LIFE IS GOOD COMPANY AND
CONSTRUCTOR.IO CORPORATION,

         Plaintiffs,

    v.

HITEL TECHNOLOGIES LLC,

         Defendant.

Civil Action No. <u>1:22-cv-11467</u>

**COMPLAINT**

DEMAND FOR JURY TRIAL

       Plaintiffs The Life is Good Company ("LIG") and Constructor.io Corporation

("Constructor") (together "Plaintiffs") allege for their Complaint against Defendant Hitel

Technologies LLC ("Hitel") as follows:

## I.     NATURE OF THE ACTION

      1.    This is an action for a declaratory judgment of noninfringement arising under the

patent laws of the United States, Title 35 of the United States Code.  LIG and Constructor bring

this action against Hitel for a declaration that they do not infringe any claim of U.S. Patent No.

7,689,617 (the "'617 patent" or "Hitel Patent").[1]  LIG and Constructor also bring this action to

recover damages incurred as a result of Hitel's unfair and deceptive business practices, including

its bad faith threats to assert frivolous patent infringement claims against LIG's website—

including technology provided to LIG by Constructor—in violation of M.G.L. Chapter 93A §§ 2

and 11.

---

[1] *See* Ex. 1 (U.S. Patent No. 7,689,617).

2.      LIG is a Massachusetts company headquartered in Boston.  LIG was founded in

1994 by two brothers, Bert and John Jacobs, who still run the company today.  LIG's mission is

to spread the power of optimism over adversity through its apparel, accessories, and lifestyle

brand "Life is Good."  As part of fulfilling this mission, LIG donates 10% of its annual net

profits to The Life is Good Kids Foundation that is dedicated to helping kids who have suffered

from trauma.  Through its Playmakers Program, The Life is Good Kids Foundation helps train

caregivers—including teachers, community center employees, and hospital workers—regarding

how to interact in a joyful manner with kids who have experienced trauma in their lives.  These

caregivers help over 1 million kids in need every single year.  A photo of LIG founders Bert and

John Jacobs wearing some of their well-known Life is Good® t-shirts is shown below.



3.      Constructor is a technology startup company founded in 2015 that provides

ecommerce search and product discovery software for ecommerce retailers, including LIG.

Constructor's proprietary software uses advanced natural language processing and machine

learning algorithms to improve product search results for online retailers when customers visit

their websites.  Constructor provides its proprietary software to LIG to improve product search

results for customers at LIG's website www.lifeisgood.com ("LIG's Website").  Pursuant to an

agreement between Constructor and LIG, Constructor has agreed to indemnify LIG for claims of

infringement with respect to the Constructor software provided to LIG that is at issue in this case.

4.     On information and belief, Hitel is a patent assertion entity whose only business since it was founded in 2020 has been asserting the '617 patent against online retailers and other companies to extract settlement payments based on litigation and/or the threat of litigation.  On information and belief, Hitel does not make or sell any products that use the '617 patent. Instead, since its 2020 founding, Hitel has filed thirty (30) lawsuits asserting infringement of the '617 patent.  Hitel is reportedly one of the most prolific filers of patent cases in the United States.[2]  Despite Hitel's assertions of the '617 patent against dozens of companies in dozens of patent cases, no company has been determined by a court to infringe the '617 patent.

5.     In the lawsuits that it has filed, Hitel asserts that its "principal place of business" is at 4757 W Park Blvd, STE 113-1052, Plano, Texas 75093.  On information and belief, Hitel's purported principal place of business is a mailbox at a store called "Postal Shoppe," which is also located at 4757 W Park Blvd, STE 113, Plano, Texas 75093.[3]  A Google Maps image of the store front of the Postal Shoppe from June 2022 is show below:

---

[2] *See* Ex. 2 (https://www.unifiedpatents.com/insights/2022-patent-dispute-report-first-quarter-in-review).
[3] *See* Ex. 3 (https://planopostalshoppe.com/).



Hitel has no connection to Plano, Texas or any other location in the Eastern District of Texas apart from this rented mailbox at the Postal Shoppe.

6.      Hitel's sole managing member is Annette Rathgeber, who also works for a company called IP Edge LLC ("IP Edge").  IP Edge purports to be Hitel's licensing advisor. Both IP Edge and Ms. Rathgeber are based in Houston, Texas.  IP Edge's address is at 5300 N Braeswood Blvd, STE 4-v620, Houston, TX 77096-3307.  Similar to Hitel, this address appears to be a mailbox, and it is located at a business called "Mailboxes of Braeswood."  IP Edge's address in Houston is located approximately 270 miles from Hitel's purported "address" in

Plano, Texas.  In 2021 alone, IP Edge-related entities reportedly filed patent infringement suits against **over 600** defendants.[4]

7.      Hitel, acting through its purported licensing agent IP Edge, and in connection with its litigation and licensing campaign, has asserted in written correspondence, emails, claim charts, and teleconference calls with LIG in this District that LIG's Website (www.lifeisgood.com) infringes multiple claims of the '617 patent, as further detailed below. Hitel also has demanded in correspondence to LIG that LIG agree to license the '617 patent and has sent a proposed "Non-Exclusive Patent License and Settlement Agreement" to LIG.

8.      The search functionality of LIG's Website that is the subject of Hitel's infringement allegations is provided to LIG by Constructor.  Contrary to Hitel's infringement allegations, LIG's Website and Constructor's software products and services provided to LIG do not infringe the '617 patent.

9.      Accordingly, LIG and Constructor bring this suit to protect LIG, defend Constructor's proprietary software against Hitel's repeated baseless allegations of infringement, and remove the cloud of Hitel's infringement allegations.

10.     For these reasons, and as further explained below, there is and remains a substantial controversy between LIG and Constructor, on the one hand, and Hitel, on the other, and this controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that LIG's Website and Constructor's proprietary search products do not infringe the '617 patent.

---

[4] *See* Ex. 4 (https://www.rpxcorp.com/wp-content/uploads/sites/6/2022/04/RPX-Q4-in-Review-January-2022.pdf).

## II.     THE PARTIES

11.     LIG is a corporation organized and existing under the laws of the State of Massachusetts with its principal place of business at 51 Melcher Street, 9th Floor, Boston, Massachusetts, MA 02210.

12.     Constructor is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 268 Bush Street, #4450, San Francisco, California 94104.

13.     On information and belief, Hitel is a limited liability company organized and existing under the laws of the State of Texas.  Hitel claims that its principal place of business is at 4757 W Park Blvd, STE 113-1052, Plano, Texas 75093.

## III.     JURISDICTION

14.     The Court has subject matter jurisdiction over LIG and Constructor's declaratory judgment claim (Count I) pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claim arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  In addition, this Court has subject matter jurisdiction over LIG and Constructor's claim for unfair and deceptive trade practices under M.G.L. Chapter 93A (Count II) pursuant to 28 U.S.C. § 1367(a).

15.     In addition, this Court has subject matter jurisdiction over LIG's and Constructor's claim against Hitel for unfair and deceptive trade practices under M.G.L. Chapter 93A (Count II) pursuant to 28 U.S.C. § 1332.  Plaintiffs LIG and Constructor and Defendant Hitel are citizens of different states.  The amount in controversy under Count II, as alleged below, exceeds the sum or value of $75,000, exclusive of interest and costs.

16.     This Court has personal jurisdiction over Hitel because it has consciously and purposefully directed activities to this District and this action arises out of and directly relates to Hitel's contacts with LIG in this District.  Specifically, LIG's and Constructor's claims in this action arise directly from Hitel's contacts with LIG in this District alleging infringement of the '617 patent and seeking a license and settlement payment from LIG, as described below.

17.     On June 29, 2022, Gautham Bodepudi of IP Edge, indicating that he was acting on behalf of Hitel, sent a "notice" letter to LIG's General Counsel John Banse at LIG's headquarters at 51 Melcher Street, 9th Floor, Boston, MA 02210, alleging that LIG's Website infringes the '617 patent.  Hitel alleged that LIG infringes the '617 patent by "making, using, selling and/or offering for sale, as well as instructing [Life is Good's] customers to use, [LIG's Website]."  The letter further asserted Hitel sought "to discuss licensing of the Hitel Patent." Hitel requested a response from LIG within two weeks of the date of the letter.[5]

18.     Along with Hitel's June 29, 2022 letter to Mr. Banse at LIG, Hitel sent LIG a 51-page claim chart purporting to provide the basis for its allegations that the LIG's Website (www.lifeisgood.com) infringes claims 1, 11, and 19 of the '617 patent.[6]

19.     On July 13, 2022, Rowie Divicay of IP Edge, acting on behalf of Hitel, sent an email to Mr. Banse, as well as LIG's President Tom Hassell and LIG's founder Bert Jacobs, all of whom either reside in this District or work for LIG in this District.  Hitel asked for a response to Hitel's June 29, 2022 letter within two weeks and provided a link to schedule a time for a call. The email stated that Hitel "would like to resolve [the] matter outside of litigation," thereby

---

[5] Ex. 5 (June 29, 2022 Letter from IP Edge/Hitel to LIG).
[6] Ex. 6 (June 29, 2022 Hitel Claim Chart to LIG).

explicitly raising the threat of litigation and showing that Hitel intended to file suit against LIG

for alleged infringement if LIG did not agree to license the '617 patent.[7]

20.     On July 19, 2022, Mr. Banse responded to Hitel explaining that he had received

Hitel's correspondence and would schedule a call using the link provided by Hitel, and he

subsequently scheduled a call for July 27, 2022.

21.     On July 19, 2022, Mr. Divicay of IP Edge, acting again on behalf of Hitel,

emailed Mr. Banse to state that "[w]e look forward to hearing further from you."[8]

22.     On July 26, 2022, Mr. Banse responded to Hitel to ask to reschedule the call for

August 10, 2022.  That same day, Mr. Divicay emailed Mr. Banse again on behalf of Hitel to

send another link to schedule a call for August 10, 2022.[9]

23.     On August 10, 2022, Hitel representative Roy Salvagio of IP Edge had a

teleconference with Mr. Banse in this District to discuss Hitel's infringement allegations against

LIG.  During the teleconference, Mr. Salvagio maintained Hitel's allegation that LIG's Website

infringes the '617 patent and stated Hitel's demand that LIG pay for a license to the '617 patent.

24.     On August 10, 2022, Mr. Salvagio emailed Mr. Banse in this District to provide a

draft "Non-Exclusive Patent License and Settlement Agreement."[10]

25.     For the reasons described above, Hitel has sufficient contacts with the District of

Massachusetts such that Hitel is subject to specific personal jurisdiction in this action under both

the U.S. Constitution and Massachusetts General Laws, Chapter 223A, Section 3.  Hitel has

purposefully availed itself of the benefits of Massachusetts law and has more than sufficient

---

[7] Ex. 7 (July 13, 2022 Email from IP Edge/Hitel to LIG).
[8] Ex. 7 (July 19, 2022 Email from IP Edge/Hitel to LIG).
[9] Ex. 7 (July 26, 2022 Email from IP Edge/Hitel to LIG).
[10] Ex. 7 (August 10, 2022 Email from Mr. Salvagio (IP Edge/Hitel) to Mr. Banse (LIG)).

minimum contacts with LIG in Massachusetts to support the exercise of this Court's specific personal jurisdiction over Hitel in this action.  Moreover, the exercise of personal jurisdiction based on Hitel's repeated contacts with Massachusetts directed to asserting and licensing the '617 patent against LIG and others is consistent with traditional notions of fairness and substantial justice.

26.     Hitel's allegations and conduct asserting the '617 patent against LIG described above have given rise to a real and immediate dispute between Hitel, on the one hand, and LIG and Constructor, which both deny Hitel's infringement allegations.  This dispute is ripe for resolution by this Court because Hitel has created in LIG and Constructor an immediate apprehension of being sued by Hitel for alleged infringement, which LIG and Constructor seek to resolve through this action to obtain a declaratory judgment of noninfringement.

27.     On information and belief, Hitel has engaged in a similar pattern of conduct with companies similarly situated to LIG and Constructor in an attempt to extract litigation settlement payments or license fees with respect to the '617 patent.   For example, in January 2022, Hitel brought a lawsuit alleging infringement of the '617 patent against New Balance Athletics, Inc. ("New Balance"), which is based in Massachusetts.  On information and belief, Hitel has entered a settlement and licensing agreement with New Balance with respect to that lawsuit.

28.     Hitel also has demonstrated its willingness and proclivity to file suit through its initiation of 30 lawsuits asserting the '617 patent against companies located throughout the United States, including in this District.  For example, in 2020, Hitel asserted the '617 patent in litigation against Gucci America, Inc., Nike, Inc., Giorgio Armani Corporation, Levi Strauss & Co., The Men's Warehouse, LLC, Hot Topic, Inc., Urban Outfitters, Inc., Big Lots Stores, Inc., The Gap, Inc., J. Crew, Inc., and Elie Tahari, Ltd.  In 2022, Hitel has thus far asserted the '617

patent in litigation against New Rue21, LLC, Tapestry, Inc., Sketchers USA, Inc., Guess?, Inc., New Balance, Zale Corporation, Recreational Equipment, Inc., James Avery Craftsman, Inc., Claire's Stores Inc., Bonobos, Inc., BB OpCo LLC, Everlane, Inc., Advanced Drainage Systems Inc., Perry Ellis Menswear, LLC, Conn Appliances, Inc., 360training.com, Inc., Lamps Plus, Inc., Ewing Irrigation Products Inc., and Rooster Teeth Productions, LLC.

29.     Accordingly, an actual and justiciable controversy exists between Hitel, on the one hand, and LIG and Constructor, on the other, with respect to whether LIG and Constructor are liable for the alleged infringement of the '617 patent.  As described further below, this controversy is immediate and substantial because Hitel has asserted that LIG's Website, including functionality provided by Constructor's proprietary software, infringes multiple claims of the '617 patent, and has demanded that LIG pay for a license to the patent; and LIG and Constructor do not infringe and do not need to license the '617 patent.  As a result of Hitel's allegations and conduct, there exists a threat of actual and imminent injury to LIG and Constructor that can be redressed by judicial relief, and that injury is sufficiently immediate and real to warrant the issuance of a declaratory judgment.  Such injury includes, among other things, uncertainty as to whether the development, use, and/or sale of LIG's Website and Constructor's search software will be free from infringement claims based on the '617 patent.  Absent a declaration of noninfringement, Hitel will continue to wrongfully assert the '617 patent against LIG and Constructor and will thereby cause LIG and Constructor irreparable injury and damage.

30.     LIG and Constructor therefore seek a judicial declaration that the claims of the '617 patent are not infringed by any LIG or Constructor website, product, and/or service.  A judicial declaration is necessary to determine the respective rights of the parties regarding the '617 patent.

## IV.  VENUE

31.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d) with respect to LIG and Constructor's claims.  As discussed above, this Court has personal jurisdiction over Hitel because Hitel has engaged in actions in this District that form the basis of LIG's and Constructor's claims against Hitel—namely, Hitel's patent assertions and licensing activity in Massachusetts directed to LIG, which is headquartered in Massachusetts, and others based in Massachusetts.

## V.  FACTUAL BACKGROUND

### A.  The Asserted U.S. Patent No. 7,689,617

32.  The '617 patent is titled "Dynamic Learning Navigation Systems" and was issued on March 30, 2010.  The named inventor of the '617 patent is Prashant Parikh of New York, New York.  The '617 patent purportedly "relates to information processing and, more particularly, learning in the context of search and navigation systems."  A true and correct copy of the '617 patent is attached as Exhibit 1.

33.  Asserted claim 1 of the '617 patent includes the following requirements:

> 1. A method performed in a system comprising user navigable nodes, documents attached to the user navigable nodes, keywords associated with the user navigable nodes and having search and navigation capability that allows users to move from node to node via links between the nodes and make selections when at individual nodes, the method comprising, at a user navigable node within the system:
>
> receiving an input from a user;
>
> determining that the input contains an unknown word;
>
> subsequent to the determining, navigating through the system to a current node from the user navigable node based upon at least one additional input from the user that was provided while at the user navigable node;

presenting at least one response to the user based upon the documents attached to the current node resulting from the navigation; and

following presentation of the at least one response, learning one or more associations between the unknown word and one or more keywords from the documents attached to the current node, such that a direct relationship is formed between the unknown word and the one or more keywords.

### B.   Hitel's Infringement Allegations Are Incorrect And Have No Basis

32.   Hitel's allegations that LIG's Website infringes one or more claims of the '617 patent are incorrect and have no basis.

33.   For example, as part of its infringement allegations for the '617 patent, Hitel alleges that LIG's Website purportedly identifies a search term "tablewaer" as an "unknown word" after it is allegedly entered by a user in a search field in LIG's Website.  As alleged support for this claim, Hitel provides alleged screenshots purporting to show a search for "tablewaer" on the LIG website that produces 19 products as search results (though only three products are shown in Hitel's screenshot below).[11]



---

[11] *See, e.g.*, Ex. 6 (June 29, 2022 Hitel Claim Chart to LIG) at 10-14.

34.     Even under Hitel's allegations, the products allegedly provided as results in the screenshots show that the term "tablewaer" was recognized by LIG's Website as a misspelling of "tableware," not as an unknown word.  Specifically, the product results for "tablewaer" shown in Hitel's alleged screenshot above include products related to the term "tableware"—*e.g.*, LIG's "It's Pie Day" t-shirt with a graphic that shows a plate and a fork (*i.e.*, tableware), as well as LIG's "USA Home Plate" t-shirts whose name includes the word "plate."  In short, LIG's Website recognized "tablewaer" as a misspelling of "tableware" and produced results related to tableware.

35.     Moreover, contrary to Hitel's allegations, the mere fact that a search term is misspelled does not mean that the misspelled term is unknown to the system.  LIG's Website uses sophisticated spelling correction software that automatically corrects spelling errors and/or recognizes common misspellings.  Such spelling correction techniques have nothing to do with the alleged invention of the '617 patent, because they do not involve using "navigation" by a user to learn the meaning of misspelled search terms.  Indeed, techniques for correcting spelling errors were known long before the '617 patent, and the '617 patent does not claim to have invented spelling correction software.

34.     As another example, Hitel alleges that LIG's Website learns one or more associations between the alleged "unknown word" "tablewaer" and a keyword "upon previous selection by users on the website."[12]  Hitel thus appears to contend that LIG's Website learns to associate "tablewaer" with some unidentified "keyword" based on a user searching for "tablewaer" and then selecting some unidentified product on LIG's Website.  But Hitel does not

---

[12] *See* Ex. 6 (June 29, 2022 Hitel Claim Chart to LIG) at 18-20.

identify any such "keyword" or any "previous selection by users on the website" that causes LIG's Website to learn to associate "tablewaer" with any keyword.

35.     In any event, Hitel's infringement allegations are incorrect.  The only prior user "selection" that Hitel refers to in its claim chart is a user searching for "tablewaer" and then selecting a "USA Home Plate" t-shirt.[13]  If Hitel's infringement allegations were correct, then the user's actions of searching "tablewaer" and then selecting a "USA Home Plate" t-shirt would cause the LIG Website to associate "tablewaer" with a keyword from the "USA Home Plate" t-shirt product page—thereby causing the system to produce the "USA Home Plate" t-shirt as a result for the search term "tablewaer" in subsequent searches.  But a later August 21, 2022 user search for "tablewaer" (shown below) did ***not*** produce the "USA Home Plate" t-shirt as a result—even after the "USA Home Plate" was allegedly selected by a user searching for "tablewaer" and even though the "USA Home Plate" t-shirt was still available on LIG's Website.[14]  Instead, the search of "tablewaer" on LIG's Website produced 12 results for tableware products, two which are shown in the screenshot below:[15]

---

[13] *See id*. at 10-15.
[14] *See* Ex. 8 (August 21, 2022 printout of results from search of "tablewaer" from LIG's Website: https://www.lifeisgood.com/search?q=tablewaer").
[15] *See id.*



This confirms that—contrary to the claimed method of the '617 patent—LIG's Website did ***not*** associate the term "tablewaer" with a keyword from the "USA Home Plate" t-shirt product page after the "USA Home Plate" t-shirt was allegedly selected by a user searching for "tablewaer."

36.     As yet another example, Hitel baselessly alleges that differences in the search results for the terms "tablewaer" and "tableware" somehow show that LIG's Website formed an association between "tablewaer" and some other unidentified keyword "upon previous selection by users on the website":

> The accused instrumentality learns the misspelled word [i.e., tablewaer] and associates it with the keywords related to the desired product. Shown page has different results then that are available for search for correctly spelled word "tableware". This indicates that accused instrumentality has associated key word "tablewaer" with the displayed results upon previous selection by users on the website.[16]

Hitel's allegations are wrong.  As shown in the snapshots below from Hitel's claim chart, even under Hitel's allegations, the snapshots it provides show that the search results for "tablewaer" and "tableware" are all ***tableware*** products, and the results for both terms include identical

---

[16] *See* Ex. 6 (June 29, 2022 Hitel Claim Chart to LIG) at 18-20, 37-39, 50-52.

"Vintage Ice Cream Bowls."  There is no basis for Hitel to conclude from the differences in the results shown in these snapshots that LIG's Website formed an association between the term "tablewaer" and some other unidentified keyword "upon previous selection by users on the website."





37.    Contrary to Hitel's allegations, LIG's Website does not practice any claim of the '617 patent.  Instead, LIG's Website uses Constructor's own independently developed and sophisticated search technologies that are nowhere described or claimed in the '617 patent.  For

example, Constructor uses its own proprietary natural language processing software to correct misspellings in search terms and automatically provide desired search results based on the correctly spelled search term without any prior selection or navigation by users.

38.     Because of the robust search capability provided by Constructor's proprietary website search software, LIG's Website has no need for the alleged invention of the '617 patent, which uses a fundamentally different and simplistic approach.  Indeed, the alleged invention of the '617 patent would reduce or disrupt the performance of Constructor's search technology in LIG's Website.  For example, the '617 patent allegedly creates associations between "unknown words" and one or more "keywords" after a specific series of steps including user navigation and an additional user input.  Such a system would create unpredictable and undesirable results for "unknown" search terms based on potentially arbitrary user navigations or selections.

## VI.     CLAIMS FOR RELIEF
### COUNT I

**Declaratory Judgment of Noninfringement of U.S. Patent No. 7,689,617**

39.     Paragraphs 1-38 are incorporated herein by reference.

40.     LIG and Constructor have not infringed and do not infringe any claim of the '617 patent, either directly or indirectly, literally or under the doctrine of equivalents, including by providing, making, using, offering for sale, or selling LIG's Website, as alleged by Hitel.

41.     For example, for the reasons explained above in Section V, LIG's Website including Constructor's search technology does not meet at least the following limitations of claim 1:

- "following presentation of the at least one response, learning one or more
  associations between the unknown word and one or more keywords from the

documents attached to the current node, such that a direct relationship is formed between the unknown word and the one or more keywords."

42.     As another example, for the reasons explained above in Section V, LIG's Website including Constructor's search technology does not meet at least the following limitations of claim 11:

- "following presentation of the at least one response, learning, from the current node, one or more node or document associations for the unknown word based upon at least one additional input from the user, such that a direct relationship is formed between the unknown word and at least one other keyword."

43.     As another example, for the reasons explained above in Section V, LIG's Website including Constructor's search technology does not meet at least the following limitations of claim 19:

- "fifth program instructions to learn one or more associations for the unknown word from one of the current node or a document associated with the current node such that a direct relationship is formed between the unknown word and a keyword already associated with one of the current node or a document associated with the current node, following presentation of the at least one response, based upon at least one additional input from the user, wherein the one or more associations comprise at least one of a) a node association, or b) a document association."

44.     LIG and Constructor do not infringe the remaining claims of the '617 patent for at least one or more of the above reasons.

45.     As set forth above, an actual controversy exists between LIG and Constructor, on the one hand, and Hitel, on the other, with respect to the alleged infringement of the '617 patent, and this controversy is ongoing and likely to continue.  Absent a declaration of noninfringement, Hitel will continue to wrongfully allege infringement of the '617 patent against LIG, Constructor, and Constructor's other customers, thereby causing LIG and Constructor irreparable injury and damage.

46.     Accordingly, LIG and Constructor seek a judicial determination and declaration that they do not infringe the '617 patent.  Such a declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties with respect to the matters set forth above.

## COUNT II

### Unfair and Deceptive Practices in Violation of M.G.L. Ch. 93A

47.     Paragraphs 1-46 are incorporated herein by reference.

48.     At all times relevant to this Complaint, LIG and Constructor have been engaged in trade or commerce in this Commonwealth within the meaning of M.G.L. Chapter 93A §§ 2 and 11.

49.     At all times relevant to this Complaint, Hitel has been engaged in trade or commerce in this Commonwealth within the meaning of M.G.L. Chapter 93A §§ 2 and 11. Specifically, on information and belief, Hitel's sole business is to assert claims for patent infringement against targeted entities, in the form of licensing demand letters and complaints filed in United States district courts.  Hitel then seeks to leverage the high costs of defending against such claims in order to extract license or settlement payments from target companies that are lower than the attorneys' fees and costs that would be incurred if the targeted company were

to defend the alleged infringement claim in litigation.  As described above, Hitel has engaged in

its business in this District through its assertions of the '617 patent against LIG in this District,

its attempt to license the '617 patent to LIG in this District, and its licensing activities against

New Balance with respect to the '617 patent in this District.

50.     In a 2013 New York Times Op-Ed Article, authored in part by former Chief

Judge Randall Rader of the United States Court of Appeals for the Federal Circuit, the authors

described the business model of "patent assertion entities" like Hitel as follows:

> Their business plan is simple: trolls (intellectual-property lawyers
> use less evocative terms like "non-practicing entities" and "patent-
> assertion entities") make money by threatening companies with
> expensive lawsuits and then using that cudgel, rather than the
> merits of a case, to extract a financial settlement. In the apt
> summary of President Obama, who on Tuesday announced a plan
> to stave off frivolous patent litigation, trolls just want to 'hijack
> somebody else's idea and see if they can extort some money.'[17]

51.     Consistent with the unfair business practices described in Judge Rader's Op-Ed,

Hitel has made baseless infringement allegations against LIG and threatened expensive litigation

if LIG does not agree to make a so-called "License and Settlement" payment to Hitel.  Simply

put, Hitel is attempting to use the threat of an expensive lawsuit, rather than the merits of the

case, to extract a financial settlement from LIG.

52.     Hitel's infringement allegations against LIG's Website are objectively baseless

for multiple reasons, including those detailed above in Section V.B and in Count I.

53.     For example, for all of the asserted patent claims, Hitel makes baseless allegations

that the Accused Website meets the "learning" requirements of the claims.  *See* '617 patent,

13:62-67 (reciting the learning requirement of claim 1); 14:42-47 (reciting the learning

---

[17] *See* Ex. 9 (Randall R. Rader et al., *Make Patent Trolls Pay in Court* (June 14, 2013), *available at* https://www.nytimes.com/2013/06/05/opinion/make-patent-trolls-pay-in-court.html).

requirement of claim 11); 16:1-12 (reciting the learning requirement of claim 19); *see also* Ex. 6 (June 29, 2022 Hitel Claim Chart to LIG) at 18-20, 37-39, 50-52.  Hitel alleges that the Accused Website "learns" "one or more associations" between "tablewaer" (the alleged "unknown word") and some other "keyword."  *See id.*  But Hitel does not—and cannot—identify a single alleged "keyword" that LIG's Website purportedly learns to associate with "tablewaer" using the claimed invention of the '617 patent.  *See id.*

54.     Further confirming that Hitel's infringement allegations against LIG have no basis, Hitel has made essentially identical "copy-and-paste" allegations against multiple other companies.  For example, as shown by the snapshots below, Hitel's infringement allegations against LIG's Website with respect to the claimed "learning" requirement of the claims are nearly word-for-word identical to its allegations against Levi Strauss & Co., Giorgio Armani Corporation, Nike, Inc., and Gucci America, Inc.—with the only exceptions of changing the alleged unknown word (highlighted below) and providing screenshots of the respective websites:

| following presentation of the at least one response, learning one or more associations between the unknown word and one or more keywords from the documents attached to the current node, such that a direct relationship is formed between the unknown word and the one or more keywords. | The accused instrumentality practices following presentation of the at least one response (e.g., displaying at the user device), learning one or more associations between the unknown word (e.g., a word which is not a keyword such as "tablewaer") and one or more keywords (e.g., keywords related to the product node) from the documents (e.g., webpage of a product) attached to the current node (e.g., a product node), such that a direct relationship is formed between the unknown word (e.g., a word which is not a keyword such as "tablewaer") and the one or more keywords (e.g., keywords related to the product node). |
|---|---|
| | As shown below, when a user searches for "tablewaer", a misspelled word, the accused instrumentality directs the user to a desired product based on the user selection. The accused instrumentality learns the misspelled word and associates it with the keywords related to the desired product. Shown page has different results then that are available for search for correctly spelled word "tableware". This indicates that accused instrumentality has associated key word "tablewaer" with the displayed results upon previous selection by users on the website. |
| | FILTER |

*See* Ex. 6 (June 29, 2022 Hitel Claim Chart to LIG) at 18-19.

| following presentation of the at least one response, learning one or more associations between the unknown word and one or more keywords from the documents attached to the current node, such that a direct relationship is formed between the unknown word and the one or more keywords. | The accused instrumentality practices following presentation of the at least one response (e.g., displaying at the user device), learning one or more associations between the unknown word (e.g., a word which is not a keyword such as "Straght") and one or more keywords (e.g., keywords related to the product node) from the documents (e.g., webpage of a product) attached to the current node (e.g., a products node), such that a direct relationship is formed between the unknown word (e.g., a word which is not a keyword such as "Straght") and the one or more keywords (e.g., keywords related to the products node).<br><br>As shown below, when a user searches for "Straght", a misspelled word, the accused instrumentality directs the user to a desired product based on the user selection. The accused instrumentality learns the misspelled word and associates it with the keywords related to the desired product. Shown page has different results that are available for search for correctly spelled word "Straght". This indicates that accused instrumentality has associated key word "Straght" with the displayed results upon previous selection by users on the website. |

See Ex. 10 (*Hitel Technologies LLC v. Levi Strauss & Co.*, No. 6-20-cv-00589 (W.D.T.X. June 29, 2020) (Dkt. 1-2 at 14)).

| following presentation of the at least one response, learning one or more associations between the unknown word and one or more keywords from the documents attached to the current node, such that a direct relationship is formed between the unknown word and the one or more keywords. | The accused instrumentality practices following presentation of the at least one response (e.g., displaying at the user device), learning one or more associations between the unknown word (e.g., a word which is not a keyword such as "T Dhirt") and one or more keywords (e.g., keywords related to the product node) from the documents (e.g., webpage of a product) attached to the current node (e.g., a products node), such that a direct relationship is formed between the unknown word (e.g., a word which is not a keyword such as "T Dhirt") and the one or more keywords (e.g., keywords related to the products node).<br><br>As shown below, when a user searches for "T Dhirt", a misspelled word, the accused instrumentality directs the user to a desired product based on the user selection. The accused instrumentality learns the misspelled word and associates it with the keywords related to the desired product. Shown page has different results then that are available for search for correctly spelled word "T Dhirt". This indicates that accused instrumentality has associated key word "T Dhirt" with the displayed results upon previous selection by users on the website.<br><br>ARMANI   WOMAN   MAN   KIDS   GIFTS   BEAUTY   LIFESTYLE |

See Ex. 11 (*Hitel Technologies LLC v. Giorgio Armani Corporation*, No. 6-20-cv-00590 (W.D.T.X. June 29, 2020) (Dkt. 1-2 at 16-17)).

| following presentation of the at least one response, learning one or more associations between the unknown word and one or more keywords from the documents attached to the current node, such that a direct relationship is formed between the unknown word and the one or more keywords. | The accused instrumentality practices following presentation of the at least one response (e.g., displaying at the user device), learning one or more associations between the unknown word (e.g., a word which is not a keyword such as "T Dhirt") and one or more keywords (e.g., keywords related to the product node) from the documents (e.g., webpage of a product) attached to the current node (e.g., a products node), such that a direct relationship is formed between the unknown word (e.g., a word which is not a keyword such as "T Dhirt") and the one or more keywords (e.g., keywords related to the products node).<br><br>As shown below, when a user searches for "T Dhirt", a misspelled word, the accused instrumentality directs the user to a desired product based on the user selection. The accused instrumentality learns the misspelled word and associates it with the keywords related to the desired product. Shown page has different results then that are available for search for correctly spelled word "T Shirt". This indicates that accused instrumentality has associated key word "T Dhirt" with the displayed results upon previous selection by users on the website. |

See Ex. 12 (*Hitel Technologies LLC v. Nike, Inc.*, No. 6-20-cv-00591 (W.D.T.X. June 29, 2020) (Dkt. 1-2 at 12)).

| | |
|---|---|
| following presentation of the at least one response, learning one or more associations between the unknown word and one or more keywords from the documents attached to the current node, such that a direct relationship is formed between the unknown word and the one or | The accused instrumentality practices following presentation of the at least one response (e.g., displaying at the user device), learning one or more associations between the unknown word (e.g., a word which is not a keyword such as "drsse") and one or more keywords (e.g., keywords related to the product node) from the documents (e.g., webpage of a product) attached to the current node (e.g., a products node), such that a direct relationship is formed between the unknown word (e.g., a word which is not a keyword such as "drsse") and the one or more keywords (e.g., keywords related to the products node). |
| | As shown below, when a user searches for "drsse", a misspelled word, the accused instrumentality directs the user to a desired product based on the user selection. The accused instrumentality learns the misspelled word and associates it with the keywords related to the desired product. Shown page has different results then that are available for search for correctly spelled word "drsse". This indicates that accused instrumentality has associated key word "drsse" with the displayed results upon previous selection by users on the website. |

*See* Ex. 13 (*Hitel Technologies LLC v. Gucci America, Inc.*, No. 6-20-cv-00592 (W.D.T.X. June 29, 2020) (Dkt. 1-2 at 14-15)).  On information and belief, Hitel's cases against Levi Strauss, Giorgio Armani, Nike, and Gucci (among others) settled without any decision on the merits. Hitel's boilerplate, cut-and-paste allegations against LIG and multiple other companies further confirms that Hitel's business practice is to make generic allegations of infringement without any basis to try to unfairly extract settlement payments from companies, including LIG, based on the threat of expensive litigation, rather than on the merits of its claims.

55.     Hitel's unfair and deceptive business practices detailed above—including, among other things, Hitel's baseless assertion of the '617 patent against LIG's Website and using the threat of costly litigation to attempt to extract a license and settlement payment from LIG— violate M.G.L. Chapter 93A §§ 2 and 11.  Moreover, Hitel's violations of M.G.L. Chapter 93A §§ 2 and 11 were knowing and willful.

56.     Hitel's unfair and deceptive business practices have caused injury to both LIG and Constructor by forcing them to expend resources investigating and defending against Hitel's baseless infringement claims.  This includes significant time and distraction to LIG and Constructor's managers and employees, as well as attorneys' fees and costs necessary to investigate and respond to Hitel's allegations.  LIG and Constructor are entitled to recover these damages, as well as enhanced damages and the costs and attorneys' fees incurred in bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, LIG and Constructor pray that judgment be entered in their favor and request:

(a)     A judgement and declaration that LIG and Constructor have not infringed and do not infringe in any manner any claim of the '617 patent;

(b)     An injunction against Hitel and its affiliates, subsidiaries, assigns, employees, agents, and/or anyone acting in privity or concert with Hitel from charging infringement or instituting any legal action for infringement of the '617 patent against LIG or Constructor, or anyone acting in privity with LIG or Constructor, including their respective divisions, successors, assigns, agents, suppliers, manufacturers, contractors, and customers;

(c)     A judgment that Hitel's conduct with respect to asserting the '617 patent against LIG's Website has violated M.G.L. Chapter 93A;

(d)     An award to LIG and Constructor of damages in an amount to be determined at trial;

(e)     An award to LIG and Constructor of enhanced damages pursuant to M.G.L. Chapter 93A;

(f)     A judgment and declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling LIG and Constructor to an award of its reasonable attorneys' fees, expenses, and costs in this action;

(g)     An award to LIG and Constructor of their costs and reasonable expenses to the fullest extent permitted by law; and

(h)     An award of such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), LIG and Constructor hereby demand a

trial by jury on all issues so triable.

Dated:  September 12, 2022                    Respectfully submitted,

                                             **WILMER CUTLER PICKERING**
                                             **HALE AND DORR LLP**

                          By:

                                             _/s/ Michael J. Summersgill_
                                             Michael J. Summersgill (SBN 632816)
                                              michael.summersgill@wilmerhale.com
                                             WILMER CUTLER PICKERING
                                              HALE AND DORR LLP
                                             60 State Street
                                             Boston, Massachusetts 02109
                                             Telephone: (617) 526-6261

                                             _Attorneys for Plaintiffs_
                                             _The Life is Good Company and_
                                             _Constructor.io Corporation_